Good morning. My name is Ji Hsien-Yi. I represent the petitioner. Can you speak up just a little bit? Thank you. Or maybe lower that. That's great. In this case, the BIA found that the petitioner did not suffer past persecution. In sole finding, the BIA relied exclusively on the court's case, Gould v. Gonzalez. Okay, but the court first... did the court make... what was the credibility finding on your... In this case, Your Honor, I believe the IG specifically found the petitioner was credible. Found credible. So then we have to look at all of that. And so... And the BIA made no credibility determination. That's right, Your Honor. So at that point, he's credible. Yeah, he's presumed to be credible. All right. So a credible testimony now. And what did he say? What's the best that he had? Okay, Your Honor, as I said, the BIA relied exclusively on Gould v. Gonzalez. Well, I understand the reason they did, but what's the best you can say about his past persecution? Yes, Your Honor. Petitioner in this case was arrested, detained, fined for attending underground church gatherings. Okay, but Gould wasn't enough, right? That's right, Your Honor. So you have to be more than Gould. That's right, because in Gould... So what's your best case in the Ninth Circuit that's most like the facts in your case? There will be Gould v. I believe the case the government cited in its brief. I believe it will be Guo v. Ashcroft. That's also a case dealing with religious persecution in China. Let me ask you the toughest question. You come up with your best case, and I look for a lot of cases to help you. But if I look at Guo and I look at Hoxa and I look at Prasad and I look at all the cases you might be able to come up with, how can I say that the BIA does not have substantial evidence to support its determination? Because if I look at Guo or Hoxa or Prasad, none of what your client got is as tough as in those cases, and they found no past persecution. Now, I can find some cases that would say past persecution, but now I'm not making this determination. I'm just looking at it for substantial evidence, again, the standard of review. So how can I say that the BIA did not even have any substantial evidence to do what it did? The BIA ignored other factors. For example, in Guo, also the Prasad, the court found there's only one isolated incident of encounter with the authorities. But in this case, Your Honor, practitioner was warned repeatedly not to attend household church activities. He was warned several times before his arrest, and he was warned upon his release from the detention, and he was warned again after his release. And he was warned? Warned not to, yes. Don't do it. What was he threatened with? Upon his release, he was given a written statement saying not to do it, otherwise you will be severely dealt with. Well, but when you look at the cases that are the slam dunks, you're way below that level. But even that being said, why isn't it fatal to your client's claim of future persecution the fact that his wife and other fellow worshippers continue to practice in China with minimal interference from the government? Because I think that this was sort of double-barreled. Actually, that's not true, Your Honor. And practitioner testified that several of his fellow believers were arrested for attending household church activities. Just a minute. Just a minute. Look at the record. Yes, Your Honor. Were they arrested for religious activities? Because when I read the record, it didn't seem to me that there's any indication of when, where, or what were the circumstances of the arrests. Yes, Your Honor. On page 87 of the administrative record, the talk about his church brothers, practitioner talking about his church brothers and sisters attending household gatherings, and then the question to him was, what happened? Was there any problem? And then practitioner replied, yes, what happened to them was the police took away several of them, too, meaning that they were taken away for attending household church gatherings. Well, what the BIA said, I wrote this down, the respondent testified that his fellow church members continue to attend household gatherings, and further, he indicated that several were taken away by the police. While we find this report troubling, he failed to provide any details surrounding these incidents, and as such, this assertion is insufficient to establish a well-founded fear of persecution upon return to China. Indeed, the respondent's wife did not indicate she was having problems following her husband's arrest, and her letter dated February 25, 2009. Moreover, the respondent testified that he spoke to his wife by telephone the night prior to the hearing, and there was no indication she was having any difficulties related to her religious practices. Well, Your Honor, if you look at the wife's letter closely, the wife's letter does indicate that the local government takes away our human rights and restricts our freedom to believe. So that belies the BIA's assertion that the wife did not report any problems with her religious activities. Well, but they considered all of that, and essentially, for you to prevail, the record has to compel a different conclusion. And there's evidence that was looked at both ways, and so that's a hard burden to overcome. That's what I'm struggling with. I don't see how it compels. The fatal flaw with the BIA's well-founded fear analysis is that the BIA did not take into consideration what happened to Petitioner himself in connection with what happened to those who are similarly situated. Well, you can't say they didn't take it into consideration. They didn't just see it the same way that you see it or that your client wants them to see it. But it's not as if they didn't consider it. So it has to compel a different result. It doesn't have to be, I might have reached a different result, but there's a standard of review that Judge Smith keeps bringing up to people, and compel is a very high standard of review. I do understand, Your Honor, but I believe in this case it's undisputed that Petitioner was prohibited from attending household church activities. Do you want to save any time for rebuttal? Yes, Your Honor. Okay, you might want to then save two minutes. Thank you, Your Honor. Good morning. May it please the Court. Good morning. I want to call Fiorino for the respondent. The Court's questioning has covered most of the points that the government wanted to address. We think that there is substantial evidence in the record to support the Board's decision. This case is squarely controlled by GU. In fact, it's even less severe than what happened in GU, and there's no evidence in the record to compel the Court to conclude that he was either persecuted in the past or has a well-founded fear of future persecution. So which Ninth Circuit case is most problematic for you, would you say? To be honest, Your Honor, I don't think any of them are problematic because this case, there's a spectrum, with GU at one end and, let's say, GUO at the other end. In GUO, the Court found past persecution. But the severity of treatment in GUO is much stronger than it is in this case. And, in fact, this case is outside of GU because in GU he was beaten. There's no beating in this case. So you're saying that if the government says to the individual that if you continue to practice your religion, that you will be arrested, detained, and we will prevent you from practicing your religion, that that does not rise to the level of persecution under our law? Correct. Because if the government says that, there would have to be evidence. But they did it. Essentially a threat. Yeah, but they did it. Say they did arrest him. Yes. That still does not rise to the level of persecution. Correct, Your Honor, because persecution is an extreme concept, as we've outlined. And even if they beat him up a little bit, that still doesn't rise to the level. Under this Court's case law in GU, correct. Got to beat him up enough. They would have to do a lot more than they did. Isn't it true that in GU they also had the petitioner, not only did they hold him for three days, arrested him, interrogated him, beat him with a rod. Then they said, don't do this anymore, and to make sure you're not going to do this anymore, you've got to come down to the police office on a continual basis. And he had to go to the police office at least four to five times, and then the police lost interest. That is GU, right? That's correct, Your Honor, yes. And in there we held no past persecution. Correct. Are you pretty much saying that there's no need for publication here, that this is less than GU, and so GU covers it? If I just put a mem dispo out that says GU, you'll know and everybody will know and we don't have to say anymore, right? I would, well, I don't know whether the Court would want to publish it or not, but yes, this case is squarely controlled by GU. The facts are similar and even less severe, so there's really no need to spend a lot of thought on this case, to be perfectly honest. We're stuck with GU. All right. Did you have anything else? No. No, thank you, Your Honor. You don't appear to have additional questions. Thank you. All right, you have a minute and 54 seconds left. Again, Your Honor, I believe this case is easily distinguishable from GU because in GU there's no evidence in record to show that attending household church, and Petino in this case was arrested, detained for the very reason that he was attending household church activities. And I will also rely on the case Cordova. That's also a case cited in government's brief, and it quoted the Seventh Circuit case, Booker v. INS. It says if a person is forbidden to practice a religion, the fact that he is not imprisoned, tortured, or banished, and is even allowed to attend school does not mean that he is not a victim of religious persecution. So I think the government missed the point. When we look at GU and comparing the GU versus this case, it's not the mass of the detention or the severity of the treatment that he received during the detention, but look at the fact of whether or not the petitioner was prohibited from practicing his religion. This is precisely the very reason petitioner was arrested, was detained, and was fined for the very reason that he was attending the underground church activities. The underground church was labeled, as petitioner testified, was labeled as illegal organization by the Chinese government. All right. Thank you, Your Honor. Thank you. Thank you both for your argument. This matter will stand submitted. The next matter on calendar is Laquan Ling v. Eric Holder, case number 1072303. Good morning, Your Honor. May it please the Court, my name is Ji-Hsien Lee. You both look very familiar. But I still need you to say your name for the record since I looked down and I looked up and there you both are. I represent petitioner. I think this case also involves the first issue that we have to deal with.
judges: Schroeder, Callahan, Smith